UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DWAYNE B.,[1]

       Plaintiff,

v.                                                                  19-CV-423 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

---

## DECISION AND ORDER

Plaintiff Dwayne B. brings this action under the Social Security Act and seeks review of a determination by the Commissioner of Social Security that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 10. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 14. Plaintiff replied. Dkt. 15.

For the following reasons, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded.

## PROCEDURAL HISTORY

On January 29, 2016, Plaintiff protectively filed Title II applications for disability insurance benefits. Tr. 10. He alleged disability beginning June 5, 2015.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order entitled "In Re: The Identification of Non-Government Parties in Social Security Opinions," this Decision and Order identifies Plaintiff by first name and last initial.

1

*Id.* The application was initially denied on March 10, 2016. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on April 1, 2016. *Id.* The ALJ held a hearing on February 20, 2018 and issued a decision on June 5, 2018, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. *See, e.g.*, Tr. 10-25. Plaintiff requested review of the ALJ's decision by the agency's Appeals Council. Tr. 138-141. The Appeals Council denied Plaintiff's request for review on February 3, 2019, making the ALJ's decision the Commissioner's final decision. Tr. 1-4. Plaintiff brought this action on April 2, 2019. Dkt. 1.

## LEGAL STANDARD

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.  Disability Determination

In denying Plaintiff's application, the ALJ evaluated his claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* § 416.920(a)(4)(iii). But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 416.920(a)(4)(iv); *id.* § 416.920(d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 416.920(a)(4)(v), (g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I. The ALJ Decision

Applying the above process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease, status post laminectomy and fusion, cervical degenerative disc disease, essential hypertension, anxiety disorder, and depressive disorder. Tr. 13. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 13-14.

The ALJ found that Plaintiff had the RFC to perform light work—except that he "must be allowed to alternate between sitting and standing every thirty minutes while remaining on task." Tr. 16. The ALJ also found that Plaintiff is able to "frequently balance and occasionally kneel, crouch, stoop, and crawl" and "occasionally climb stairs and ramps." *Id.* He "can never climb ladders, ropes, or scaffolds" and "can never be exposed to vibrations." *Id.* In addition, the ALJ found that Plaintiff "is able to understand and remember simple instructions, make simple work related decisions, and carry out simple instructions." *Id.*

As part of his determination as to Plaintiff's physical RFC—which is the focus of Plaintiff's argument—the ALJ considered the medical opinions of Dr.

5

Gilbert Jenouri and Dr. Donna Miller, two consultative examiners who "had the benefit of examining [Plaintiff]." *See, e.g.*, Tr. 20, 21-22. Their medical opinions concerned Plaintiff's physical health. *Id.* The ALJ assigned "little weight" to the opinion of Dr. Jenouri, which the ALJ deemed "vague." Tr. 20. The ALJ found that Dr. Jenouri's medical statement did not "contain any specific function-by-function limitations to which [the ALJ] could render meaningful review." *Id.* In addition, the ALJ found that Dr. Jenouri "assessed 'mild to moderate' limitations without defining [those] terms" and further failed to "clarify what he meant by 'long periods.'" *Id.*

The ALJ assigned "little weight" to the medical opinion of Dr. Miller. Tr. 21-22. The ALJ reasoned that Dr. Miller provided "only a vague medical statement without any specific function by function limitations to which [the ALJ] could render meaningful review." *Id.* at 22. In addition, the ALJ found that Dr. Miller "did not define what she meant by 'moderate' limitations . . . [and] 'heavy lifting,' nor did she provide any detailed medical explanation for this opinion." *Id.* The ALJ also found that Dr. Miller's "designation of 'moderate' limitations does not necessarily correspond to her own physical exam findings . . . ." *Id.* Further, the ALJ found that Dr. Miller's "general description of 'moderate' difficulties with heavy lifting, bending, and carrying are not overall supported by the claimant's other physical exams . . . ." *Id.*

As part of his RFC analysis, the ALJ acknowledged that Plaintiff underwent back surgery in 1991. Tr. 22. In addition, the ALJ acknowledged that x-rays

6

showed degenerative disc disease and "degenerative changes with foraminal encroachment at C4 to C5 without cord compression . . . ." *Id.* The ALJ found that those images, "along with [Plaintiff's] persistently obese body habitus, drowsiness from medication, elevated blood pressure readings, and reports of radiating pain to the lower extremities," support limiting Plaintiff to light exertion, "with no climbing of ladders, ropes or scaffolds, frequent balancing, occasional climbing of ramps and stairs, kneeling, crouching, stopping, and crawling." *Id.*

The ALJ also found—in "an abundance of caution" for Plaintiff's "orthopedic exam that showed 1+ reflexes in the lower extremities and lumbar pain to palpation" and exam for "positive straight leg raises at 30 degrees"—that Plaintiff should not be exposed to vibrations and must be allowed to alternate standing and sitting every thirty minutes while working. Tr. 22-23.

At steps four and five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform—including, for example, small parts assembler, electronics worker, and "Cashier II." Tr. 24. Accordingly, the ALJ found that Plaintiff was not disabled.

## II.   Analysis

Plaintiff argues that the ALJ's RFC was unsupported by substantial evidence, requiring remand. Specifically, Plaintiff argues that the ALJ's failure to assign significant weight to either of the two medical opinions concerning Plaintiff's physical health—those of Dr. Jenouri and Dr. Miller—constituted a rejection of those medical opinions that, in turn, resulted in an evidentiary gap and an RFC analysis based on the ALJ's own lay opinion. Dkt. 10-1, at 11-12. Rather than

"reject" those opinions as "vague," Plaintiff argues that the ALJ should have contacted Dr. Jerouri and Dr. Miller for clarification. *Id.* at 13-14. Plaintiff also argues that the ALJ should have contacted those doctors to "obtain updated opinion[s]" considering "later imaging evidence." *Id.* at 14; *see also id.* at 13. For the reasons discussed below, the Court concludes that remand is warranted.[2]

In evaluating Plaintiff's physical RFC, the ALJ considered the medical opinions of consultative examiners Dr. Jenouri and Dr. Miller. Tr. 20-22. Deeming both medical opinions "vague" and lacking any description of function-by-function limitations to which he could render "meaningful review," the ALJ gave them little weight. *Id.*

Because the ALJ did not assign significant weight to either opinion, and because it is not clearly apparent that the medical evidence of record supports the ultimate RFC determination, "it is unclear to this Court how the ALJ, who is not a medical professional, determined that Plaintiff retained the RFC described above." *Brett M. v. Comm'r of Social Security*, No. 19-cv-01235-FPG, 2020 WL 7487860, at *3 (W.D.N.Y. Dec. 21, 2020). On this record, by giving "little weight" to each opinion that bore on his physical RFC analysis, the ALJ "created a gap in the record

---

[2] Accordingly, the Court declines to consider Plaintiff's additional argument, which focuses on the ALJ's alleged failure to (1) pose hypothetical questions to the vocational expert, and (2) consider Plaintiff's age as "borderline closely approaching advanced age." *See* Dkt. 10-1, at 14-18; *see also Smith v. Comm'r of Social Security*, 337 F. Supp. 3d 216, 227 (W.D.N.Y. 2018) (declining to consider the plaintiff's additional argument why the ALJ's decision was not supported by substantial evidence where the Court had "already determined . . . that remand of this matter for further administrative proceedings is necessary").

necessitating remand." *Id.* Indeed, based on the facts of this case, the ALJ's failure to seek clarification or otherwise order a new consultative examination left the ALJ's physical RFC assessment unsupported by any medical opinion evidence. *See Travis L. v. Saul*, No. 3:19-CV-663 (CFH), 2020 WL 5633823, at *9-10 (N.D.N.Y. Sep. 21, 2020) (remanding for further development of the record where the only medical opinion that addressed the plaintiff's exertional limitations was vague and where the remainder of medical evidence, "particularly with respect to plaintiff's exertional limitations, was extremely sparse"); *see also Fioretti v. Saul*, 19-CV-248-MJR, 2020 WL 3046097, at *4 (W.D.N.Y. June 8, 2020) (remanding where the ALJ gave "some weight" to the only medical opinion evidence regarding Plaintiff's diabetes because the ALJ should have "obtain[ed] another medical opinion regarding Plaintiff's limitations" instead of "rel[ying] on his own interpretation of the raw medical data to determine Plaintiff's RFC"); *Oswald v. Comm'r of Social Security*, No. 17-CV-6621P, 2019 WL 2610711, at *8, n.2 (W.D.N.Y. June 26, 2019) ("[T]he ALJ discounted several opinions from . . . consultative examiners on the grounds that they were vague and did not provide function-by-function analyses of [Plaintiff's] work-related restrictions. Had they been recontacted, they might have been able to clarify their opinions and provide the desired functional analyses.").

It is not clearly apparent that the medical evidence of record supports the ultimate RFC determination. *Compare Brett M.*, 2020 WL 7487860, at *4 (remanding where each medical opinion was afforded only limited weight and the RFC was unsupported by substantial medical evidence), *with Hamilton v. Comm'r*

*of Social Security*, 2020 WL 5544557, at *6, n.6 (granting Commissioner's motion for judgment on the pleadings where the ALJ did not err in assessing a more restrictive RFC based on both opinion evidence and the plaintiff's testimony).

The Commissioner argues that the ALJ did not need to contact Dr. Jenouri and Dr. Miller because the ALJ also considered the medical opinions of Drs. Santoro, Santarpia, Ochoa, and Tzetzo. Dkt. 14-1, at 14-15. But the ALJ considered those doctors' medical opinions when analyzing Plaintiff's mental RFC—and gave all but two of those opinions "little weight." *See* Tr. 19-20 (giving "little weight" to State agency mental health consultant Dr. Ochoa); Tr. 20 (giving "little weight" to Dr. Tzezto's opinions that Plaintiff's mental health impairments were non-severe); Tr. 20-21 (giving "some weight" to psychological consultive examiner Dr. Santoro); Tr. 21 (giving "some weight" to the opinion evidence of psychological consultive examiner Dr. Santarpia).

The Commissioner further argues that the ALJ's RFC determination is also based on notes from a nurse practitioner that "generally found that Plaintiff was alert, pleasant oriented, and cooperative and had good eye contact and logical and goal-directed thought processes." Dkt. 14-1, at 14. But those traits are not sufficiently compelling to overcome the need to further develop the record with respect to Plaintiff's physical limitations. Notably, too, while the ALJ considered Plaintiff's lumbar x-ray and cervical x-ray that showed "degenerative" changes while formulating Plaintiff's RFC, neither Dr. Jenouri nor Dr. Miller appear to have considered that later imaging. Tr. 22; Tr. 368-369.

In addition, while Plaintiff testified that he was able to perform certain activities of daily living, such as "very basic" home repairs like changing lightbulbs, he clarified that his pain impairs his pace, ability to finish a task, and concentration. *See* Tr. 71-72; *see also* Tr. 17 (describing Plaintiff's testimony that he is able to do simple chores for a few minutes at one time before needing to rest; that he lays down during the day to relieve his pain; and that his wife cooks and cleans); Tr. 67-68 (testifying that "two to three days a week" he needs to "lay on [his] sides and try to take the pressure off of [his] spine").

Under certain circumstances, "particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Oswald v. Comm'r of Social Security*, No. 17-CV-6621P, 2019 WL 2610711, at *6 (W.D.N.Y. June 26, 2019) (internal citations and quotations omitted). Those circumstances are not present here, where Plaintiff has several severe impairments and back surgery dating back to 1991. *See, e.g.*, Tr. 13, 17, 22.

On the facts of this case, the ALJ erred by failing to develop the record fully when faced with "vague" reports from two consultative examiners, whose medical opinions were the only ones clearly considered by the ALJ in determining Plaintiff's physical RFC. This case is remanded to allow the ALJ to develop the record as needed and then to reweigh the evidence.

11

## CONCLUSION

For these reasons, the Court GRANTS Plaintiff's motion for judgment on the pleadings (Dkt. 10) in part and DENIES the Commissioner's motion for judgment on the pleadings (Dkt. 14). The Commissioner's decision is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision and order. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  March 24, 2021
        Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE